**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Jeffrey A. Atteberry (Cal. Bar No. 266728)
jatteberry@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

Pro Bono Counsel for
Plaintiff ERIK TAYLOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK TAYLOR,<br><br>                Plaintiff,<br><br>v.<br><br>VICTOR LEMUS and JOAQUIN RINCON,<br><br>                Defendants. | Case No. 2:11-cv-9614-FMO-SS<br><br>**THIRD AMENDED COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). This action arises under the Civil Rights Act, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

2. Venue is proper under 28 U.S.C. § 1391 because Defendants work in and, on information and belief, reside in this district. Moreover, the events giving rise to this claim occurred in this district.

## PARTIES

3. Plaintiff is, and was at all times relevant to this complaint, a citizen of the United States and a resident of Los Angeles, California. Plaintiff resides, and at all times relevant to this complaint resided, at 252 East Lanzit Avenue, Apartment 4, in Los Angeles, California.

4. Defendant Victor Lemus ("Deputy Lemus") is, and was at all times relevant to this complaint, employed as a Deputy Sheriff by the Los Angeles County Sheriff's Department and acted under color of state law in his capacity as an employee thereof. He is being sued only in his individual capacity.

5. Defendant Joaquin Rincon ("Deputy Rincon") is a Sergeant employed by the Los Angeles County Sheriff's Department. At all times relevant to this complaint, he was employed as a Deputy Sheriff by the Los Angeles County Sheriff's Department and acted under color of state law in his capacity as an employee thereof. He is being sued only in his individual capacity.

## FACTS

6. On December 22, 2009, as Plaintiff was driving to his apartment, Defendants turned on the overhead light on their patrol vehicle and signaled to Plaintiff to pull over.

7. Upon seeing this signal, Plaintiff pulled his vehicle into the driveway of his apartment at 252 East Lanzit Avenue. After Plaintiff stopped his car, both Defendants exited their patrol vehicle.

8. Before exiting his vehicle, Plaintiff used his cell phone to call his mother, Barbara Martin, who resided at 252 East Lanzit Avenue with Plaintiff. Plaintiff informed his mother that he was being pulled over by Defendants.

9. Plaintiff then exited his vehicle and informed Defendants that he was on parole. He asked Defendants why they were stopping him.

10. Defendants informed Plaintiff that they had observed him commit several traffic violations. Deputy Lemus conducted a pat-down search of Plaintiff while Defendant Rincon began to search Plaintiff's vehicle. After completing this search, Deputy Lemus placed Plaintiff's hands behind his back and walked him to the patrol vehicle while holding Plaintiff's hands with his left hand.

11. At all relevant times, Plaintiff fully cooperated and complied with the instructions provided by Defendants.

12. As Deputy Lemus escorted Plaintiff to the patrol vehicle, Deputy Lemus noticed that a woman was standing outside of Apartment 4. Deputy Lemus asked Plaintiff who that woman was. When Plaintiff responded that it was his mother, Deputy Lemus told Plaintiff that Plaintiff was a "bitch" for calling for his mother. Plaintiff asked Deputy Lemus why he felt the need to be disrespectful. Plaintiff then told Deputy Lemus that his mother was a "bitch."

13. Without justifiable cause or provocation, Deputy Lemus then punched Plaintiff in the side of his head and proceeded to perform a leg sweep to bring Plaintiff to the ground.

14. As a result of this leg sweep, Plaintiff fell face-down onto the ground. Deputy Lemus then straddled Plaintiff and punched him several more times in the head.

15. As Deputy Lemus continued to punch Plaintiff in the head, Deputy Rincon pulled out his pistol and pointed it at Plaintiff. When Plaintiff's mother saw Deputy Rincon point his pistol at Plaintiff, she screamed "Please don't. Please don't."

16. After Deputy Lemus ceased punching Plaintiff, Defendants then handcuffed Plaintiff, placed him under arrest, and escorted him to the back of a patrol vehicle.

17. Shortly after this altercation occurred, Sergeant Jose Mendoza and four additional deputies of the Los Angeles County Sheriff's Department arrived at 252 East Lanzit Avenue.

18. Plaintiff's car was searched for drugs, weapons, and other contraband. No contraband was found during this search.

19. Sergeant Mendoza and Defendants then conducted a search of Apartment 4, where Plaintiff lived with his mother and his sister, Tomanika Taylor. Plaintiff's mother and sister were required to stay outside the apartment during this search. Plaintiff's mother was not allowed in, even though she asked to use the bathroom and retrieve her medication.

20. During this search, Deputy Rincon purportedly found an unloaded .40 caliber pistol, several rounds of .38 caliber ammunition, marijuana, and a scale in a container under a couch in the living room.

21. Plaintiff did not in fact possess a .40 caliber pistol, .38 caliber ammunition, marijuana, or a scale. On information and belief, those items were not in fact in his apartment prior to the search.

22. Sergeant Mendoza then took a post-search video showing the pistol, ammunition, marijuana, and scale on the cushion of the couch. The post-search video did not show the container in which Deputy Rincon purportedly found the items. The items, but not the container, were taken into evidence.

3
THIRD AMENDED COMPLAINT

23. Deputy Lemus then wrote an incident report in which he stated that Plaintiff had initiated the altercation by breaking free of his grasp, spinning to his right, and striking Deputy Lemus on the shoulder with his right forearm. Deputy Lemus also stated in that incident report that Deputy Rincon found a pistol, ammunition, marijuana, and a scale under the couch in Plaintiff's living room.

24. Deputy Rincon reviewed the incident report before Deputy Lemus submitted it to Sergeant Mendoza. Sergeant Mendoza reviewed and approved Deputy Lemus's incident report.

25. Deputy Rincon and Sergeant Mendoza also submitted separate incident reports, which purported to corroborate Deputy Lemus's account of the incident and the findings of the search. Deputy Rincon's incident report did not mention that he had drawn his weapon and pointed it at Plaintiff.

26. Deputy Lemus reviewed this incident report before Deputy Rincon submitted it to Sergeant Mendoza. Sergeant Mendoza also reviewed and approved Deputy Rincon's incident report.

27. Plaintiff was charged with several crimes on the basis of Defendants' reports. These crimes included: (1) resisting a police officer; (2) battery upon a police officer; (3) being a convicted felon in possession of a firearm; (4) possession of marijuana; and (5) being a convicted felon in possession of ammunition. Plaintiff remained in custody pending trial on these charges.

28. On January 11, 2010, Deputy Lemus gave sworn testimony about this incident at a Preliminary Hearing before the Honorable David Sotelo of the Los Angeles Superior Court. At that hearing, Deputy Lemus testified under oath that the container in which he found the gun, ammunition, marijuana, and scale was "the size of a shoebox" and made out of cardboard.

29. A subsequent investigation of Apartment 4 revealed that the couch sat too low to the floor for a shoebox to fit underneath it. Plaintiff's counsel provided

the District Attorney's office with photographs showing that a shoebox could not fit under the couch.

30. Deputy District Attorney Adewale Oduye then spoke to Deputy Rincon regarding the search. Deputy Rincon was unable to provide a satisfactory explanation for the discrepancy between Deputy Lemus's Preliminary Hearing testimony and the evidence that a shoebox would not fit under the couch.

31. After determining that Defendants' account of the search were inconsistent and that Deputy Lemus had given false testimony at the preliminary hearing, Deputy District Attorney Oduye informed the court on March 29, 2010 that it was unable to proceed against Plaintiff. The court then dismissed the charges against Plaintiff in the interest of justice and ordered Plaintiff released from custody.

32. As a result of Defendants' false statements, Plaintiff remained in custody for over three months, from December 22, 2009 until March 29, 2010.

33. After being released from custody, Plaintiff continued to suffer from severe ear pain and recurrent ear infections. Plaintiff was seen by multiple doctors, all of whom confirmed that Plaintiff had suffered a ruptured tympanic membrane as a result of blunt force trauma to his head.

34. Despite multiple rounds of antibiotic treatment, Plaintiff continues to suffer from ear pain, ear infections, and other symptoms. For instance, while Plaintiff is certified as a locksmith, he is unable to work as a locksmith because of damage to his sense of balance. Likewise, Plaintiff has been unable to pursue work as a musician or music producer because of lasting damage to his hearing.

**FIRST CAUSE OF ACTION**
(Use of Excessive Force in Violation of the Fourth Amendment)

35. Plaintiff incorporates by reference paragraphs 1-34 as if fully set forth herein.

36. Plaintiff has a clearly established right under the Fourth Amendment to the United States Constitution to be free from excessive force.

37. As described above, Defendant Lemus used excessive force against Plaintiff by, among other acts, punching him in the head repeatedly.

38. As described above, Deputy Rincon used excessive force against Plaintiff by, among other acts, pointing a loaded weapon at him despite the fact that Plaintiff was unarmed and face down and that Deputy Rincon was in no danger.

39. In light of the facts and circumstances confronting Defendants, their use of force was excessive and unreasonable.

40. As a direct and proximate result of Defendants' use of excessive force, Plaintiff suffered substantial injury.

41. Defendants, while acting under color of law, intentionally, maliciously, and wantonly, and/or with callous or reckless indifference to Plaintiff's constitutional rights, deprived Plaintiff of his constitutionally-protected right to be free from the use of excessive force. Plaintiff is therefore entitled to punitive damages in an amount sufficient to punish or make an example of Defendants.

**SECOND CAUSE OF ACTION**
(Unlawful Incarceration in Violation of the Fourth Amendment)

42. Plaintiff incorporates by reference paragraphs 1-40 as if fully set forth herein.

43. Plaintiff has a clearly established right under the Fourth Amendment to the United States Constitution to be free of unreasonable searches and seizures, including seizures predicated on information that a police officer knows to be false.

44. Defendants deprived Plaintiff of his Fourth Amendment rights when they placed him under arrest without probable cause to believe he had committed a crime.

6
THIRD AMENDED COMPLAINT

45. Further, Defendants deprived Plaintiff of his Fourth Amendment rights when they drafted and submitted incident reports stating, among other things, that Plaintiff had attacked Deputy Lemus without provocation and that Deputy Rincon had found a firearm, ammunition, marijuana, and a scale under the couch in Plaintiff's living room.

46. Those reports were false because Plaintiff did not in fact attack Deputy Lemus and because, prior to the search, the items purportedly found by Deputy Rincon were not present in Plaintiff's apartment.

47. Defendants' incident reports also omitted critical details regarding the incident. For instance, both reports failed to mention that Deputy Lemus punched Plaintiff after Plaintiff stated that Deputy Lemus's mother was a "bitch." Likewise, both reports failed to mention that Deputy Rincon drew his weapon and pointed it at Plaintiff.

48. Defendants' reviewed each others' incident reports before submitting them and had the opportunity to correct any mistakes contained therein. Defendants nonetheless submitted incident reports containing false and misleading details about their interaction with Plaintiff.

49. Based upon the false information provided by Defendants in these incident reports, the Los Angeles District Attorney's Office filed a criminal complaint against Plaintiff. The criminal complaint charged Plaintiff with: (1) resisting a police officer; (2) battery upon a police officer; (3) being a convicted felon in possession of a firearm; (4) possession of marijuana; and (5) being a convicted felon in possession of ammunition.

50. Plaintiff remained in custody pending trial on these charges.

51. On January 11, 2010, Deputy Lemus testified under oath that he found the alleged contraband under Plaintiff's couch in a box "the size of a shoebox." This testimony was false because a shoebox was too large to fit under Plaintiff's couch.

52. When the Deputy District Attorney became aware that this testimony was false and that Deputy Lemus's testimony contradicted that of Deputy Rincon, he informed the court that there was not enough evidence to proceed against Plaintiff. Only then was Plaintiff released from custody.

53. Defendants acted without probable cause in filing these incident reports, in making false testimony, and in encouraging the prosecution of Plaintiff because they did not act honestly or reasonably and did not in good faith believe that Plaintiff had committed any criminal act.

54. Defendants were motivated by bad faith in that they had a preference toward finding Plaintiff guilty and did not have an interest in the truth of the charges.

55. As a result of Defendants' conduct, Plaintiff was deprived of his Fourth Amendment rights in that he remained in custody from December 22, 2009 until March 29, 2010, when the Deputy District Attorney admitted that he lacked sufficient evidence to proceed against Plaintiff.

56. As a direct and proximate result of Defendants' deprivation of his Fourth Amendment rights, Plaintiff suffered substantial injury.

57. Defendants, while acting under color of state law, intentionally, wantonly, maliciously, and/or with callous or reckless indifference to Plaintiff's constitutional rights, deprived Plaintiff of his Fourth Amendment rights by making false statements to ensure that Plaintiff was prosecuted for crimes he did not commit and to cover up their own misconduct. Plaintiff is therefore entitled to punitive damages in an amount sufficient to punish or make an example of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court provide relief as follows:

58. Monetary damages for the physical injuries, emotional and mental distress, and other harm Plaintiff has suffered from the denial of his constitutional right to be free from excessive force, false arrest, and wrongful imprisonment;

59. In the alternative, nominal damages for the denial of Plaintiff's constitutional right to be free from excessive force, false arrest, malicious prosecution, and wrongful imprisonment;

60. Punitive damages in an amount sufficient to punish Defendants for their wanton, willful, oppressive, and intentional conduct in violation of Plaintiff's constitutional rights and/or to make an example of them;

61. Attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988; and

62. Such other and further relief as the Court deems just and proper.

DATED: April 29, 2015        JENNER & BLOCK LLP

By: _____
Kenneth K. Lee

Pro Bono Counsel for
Plaintiff ERIK TAYLOR